IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT AKERS, #K-68901, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-997-JPG |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| DR. ROBERT SHEARING, | ) |
| MOLDENHAUER, | ) |
| DR. SAMUEL NWAOBASI, | ) |
| MAJOR ZIEGLER, | ) |
| LIEUTENANT CARTWRIGHT, | ) |
| SERGEANT SHIRTZ, | ) |
| and UNKNOWN PARTY (Grounds Crew | ) |
| Supervisor), | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a 30-year sentence for murder and a five-year sentence for escape. He brings two claims: that he has been denied necessary surgery to correct a painful and dangerous inguinal hernia, and that he was injured in a slip-and-fall accident due to the deliberate indifference of certain Defendants. Along with his complaint, Plaintiff filed a motion for preliminary injunction in which he requests the Court to order Defendants to refer him to a qualified specialist for surgical treatment of his hernia (Doc. 2).

In the complaint (Doc. 1), Plaintiff states that he suffered an injury in June 2012 that

caused him to develop the inguinal hernia.[1] His intestines are protruding through the torn tissues, and "externally it is the approximate size of a baseball" (Doc. 1, p. 3). Plaintiff has been seen by several medical professionals at Menard, but none of them have provided adequate treatment. As a result, the injury has become worse over time and his pain has increased.

Plaintiff saw Defendant Dr. Nwaobasi on June 21, 2012, and reported that the hernia was causing him sudden and intensely sharp pain affecting all his daily activities. Defendant Nwaobasi did prescribe pain medication, but said he would not "fix the hernia" with surgery because it was not "life-threatening." *Id*. Plaintiff contends that the only way to treat a hernia such as his is through surgical repair. He attaches information from the National Institutes of Health (Doc. 1-1, pp. 12-20) describing the risk that an inguinal hernia may become incarcerated (where the protruding intestine or tissue "becomes stuck in the groin or scrotum and cannot go back into the abdomen," Doc. 1-1, p. 15) or strangulated (where the blood supply to the small intestine may become obstructed if an incarcerated hernia is not treated; lack of blood supply to that organ is an "emergency situation" and is a "life-threatening condition." *Id*.). Plaintiff contends that if surgery is not performed, his hernia will continue to get worse until it becomes life-threatening. Because Defendant Nwaobasi provided no treatment other than pain medication which proved ineffective, Plaintiff's abdominal tissue has torn further. This has increased the size of his hernia as well as the degree of his pain (Doc. 1, p. 4).

On September 27, 2013 (nearly 15 months after his initial injury), Plaintiff was seen by Defendant Moldenhauer (nurse practitioner). This Defendant told Plaintiff he would not authorize surgery, and said that "the pain is just something [Plaintiff] will have to deal with." *Id*.

---

[1] An inguinal hernia occurs in the groin area. *See* Mayo Clinic, Inguinal Hernia Symptoms, http://www.mayoclinic.org/diseases-conditions/inguinal-hernia/basics/symptoms/con-20021456 (last visited Oct. 2, 2014).

Defendant Moldenhauer gave Plaintiff no treatment whatsoever.

Plaintiff saw Defendant Dr. Shearing (who was then the Medical Director at Menard) on November 1, 2013. Plaintiff explained that he has ongoing intense pain; he cannot cough, sneeze, or blow his nose without needing to hold the hernia in an attempt to avoid further tearing; he has difficulty moving his bowels; any slight and sudden movement causes the tissues to tear; he has difficulty sleeping due to the pain; his digestion is affected; and he cannot exercise at all (Doc. 1, pp. 4-5). Plaintiff told the doctor that according to what he had read about the condition, the only way to treat this type of injury is through surgery (See Doc. 1-1, pp. 12-20). Defendant Shearing responded that he "will not authorize surgical repair," and offered no other treatment.

Plaintiff asserts that the policies and procedures established by Defendant Wexford Health Sources, Inc. ("Wexford"), to cut the costs of providing care to inmates have caused the above medical-professional Defendants to deny him proper medical care. In turn, these cost-cutting practices have caused Plaintiff to suffer from cruel and unusual punishment in violation of his constitutional rights (Doc. 1, p.5).

Finally, Plaintiff notes that he has filed a grievance against the current Menard Medical Director, Dr. Trost, over the same problems described herein, and anticipates amending his complaint soon to add him as another Defendant (Doc. 1, p. 6).

Plaintiff's second claim is against Defendants Cartwright, Shirtz, Ziegler, and the Unknown Party (John Doe) Grounds Crew Supervisor. He claims that each of these Defendants was deliberately indifferent to a serious risk to Plaintiff's safety when, on January 7, 2014, Plaintiff was required to walk across a slippery, ice-covered outdoor area in order to get from the cell house to the dining hall for lunch. Defendants Cartwright and Shirtz personally saw the

obvious safety hazard posed by the ice. However, they and/or Defendant Ziegler (their supervisor) ordered Plaintiff and the other prisoners to walk across the ice, when they instead could have ordered the inmates to be fed in their cells (Doc. 1, pp. 6-7). The John Doe Grounds Crew Supervisor failed in his responsibility to clean up the ice.

A Plaintiff was walking on the slippery surface and trying to maintain his balance, his hernia pain suddenly intensified, at which point he lost his footing completely (Doc. 1, p. 8). He grabbed the hernia in an attempt to prevent it from further tearing, thus he was not able to use his hands to catch himself as he fell. The fall injured his spine and sciatic nerve. Plaintiff was immediately taken to the Health Care Unit in a wheelchair. His injuries kept him bedridden and unable to leave his cell for several days. The next day, the prison went on lockdown due to the weather.

Plaintiff seeks declaratory relief, compensatory and punitive damages, and an injunction ordering Defendants to provide him with hernia surgery.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action, which shall receive further review:

> **Count 1:** Eighth Amendment deliberate indifference claim against Defendants Wexford Health Sources, Inc., Shearing, Moldenhauer, and Nwaobasi, for failing to provide necessary medical treatment for Plaintiff's painful inguinal hernia;
>
> **Count 2:** Eighth Amendment claim against Defendants Ziegler, Cartwright, and Shirtz, for ordering Plaintiff to walk across the ice-covered yard with deliberate indifference to a known, obvious, and substantial risk of serious bodily harm that could result from a fall.

**Count 1 – Deliberate Indifference to Serious Medical Condition**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but does require "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Plaintiff's inguinal hernia is clearly an objectively serious medical condition, and each of the medical Defendants knew of Plaintiff's diagnosis. At the pleadings stage, his allegations are sufficient to state a claim that the medical-provider Defendants (Shearing, Moldenhauer, and Nwaobasi) failed to take reasonable measures either to mitigate the risk that Plaintiff's condition could become life-threatening, or to address his ongoing pain and its effect on his normal daily activities. Further factual development is necessary in order for the Court to determine whether these Defendants' actions rose to the level of unconstitutional deliberate indifference, or amounted to mere malpractice or negligence. Accordingly, Count 1 shall proceed for further review against the individual medical Defendants.

Defendant Wexford Health Sources, Inc., is a corporation that employs Defendants Shearing, Moldenhauer, and Nwaobasi, and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held accountable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Here, Plaintiff has alleged that the individual medical-provider Defendants either acted or failed to act as a result of an official cost-cutting policy or practice espoused by Defendant Wexford. Therefore, Plaintiff's claim in Count 1 against Defendant Wexford cannot be dismissed at this stage.

In addition, because Plaintiff is seeking injunctive relief in the form of an order for medical treatment, the Court shall direct the Clerk to add the current Warden of Menard (in her official capacity) as a party Defendant, for the purpose of carrying out any injunction that may ultimately be ordered. *See* FED. R. CIV. P. 21; FED. R. CIV. P. 17(d);[2] *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

**<u>Count 2 – Deliberate Indifference to Excessive Risk of Injury</u>**

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Prison conditions that deprive inmates of basic human needs – food,

---

[2] Federal Rule of Civil Procedure 21 states in pertinent part: "On motion or on its own, the court may at any time, on just terms, add or drop a party." Rule 17(d) provides: "A public officer who . . . is sued in an official capacity may be designated by official title rather than by name, but the court may order that the officer's name be added."

medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

In order to prevail on a conditions-of-confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). In other words, the condition, viewed objectively, must present an excessive risk to physical safety. The subjective deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. Mere negligence, however, will not lead to liability in a § 1983 case. *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (no constitutional violation where inmate was injured in a fall caused when guard negligently left a pillow on a stairway); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995).

Where prison inmates have been injured from falling on a wet, slippery, or uneven floor, or suffered some injury caused by a dangerous condition on the premises, courts have generally found that such conditions were not objectively serious enough to implicate the Eighth Amendment. *See, e.g.*, *Christopher v. Buss*, 384 F.3d 879, 881-83 (7th Cir. 2004) (inmate injured by softball that bounced off hazardous protrusion on field was not exposed to an sufficiently serious objective risk to his safety); *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) ("[F]ailing to provide a maximally safe environment, one completely free from . . . safety hazards, is not [a constitutional violation]."); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("an inch or two" of accumulated water in the shower was not "an excessive risk to inmate health or safety"); *Bell v. Ward*, 88 F. App'x 125 (7th Cir. 2004) (affirming the dismissal of a slip-and-

fall claim on § 1915A review because accumulation of water on prison floor did not present a substantial risk of serious injury); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993); ("slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment"); *Hopkins v. Dittmann*, No. 12-cv-755, 2012 WL 3882321 (E.D. Wis. Sept. 6, 2012) (snow-covered and icy walkway where inmate slipped and fell on "unseen patch of black ice" while walking to his prison job did not amount to an objectively serious condition); *Bair v. Grounds*, No. 11-cv-718-MJR, 2012 WL 3261366 (S.D. Ill. Aug. 8, 2012) (dangerous gym floor did not pose excessive risk to health or safety; Eighth Amendment claim dismissed under § 1915A). As the Seventh Circuit observed, "An objectively 'sufficiently serious' risk . . . is one that society considers so grave that to expose *any* unwilling individual to it would offend contemporary standards of decency [such as] the acute risks posed by exposure to raw sewage, or inordinate levels of environmental tobacco smoke, or amputation from operating obviously dangerous machinery, or potential attacks by other inmates . . . ." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (internal citations omitted). The ordinary risk of injury from voluntarily playing softball, even on an imperfect field, pales in comparison to the serious risks posed by the preceding list of hazards to which inmates might be involuntarily exposed. *Id*. A condition posing a "substantial risk" suggests a greater likelihood that serious harm might actually occur, and includes "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). The *Christopher* court observed, "The state violates the proscription [against cruel and unusual punishment] when it 'so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs.'" *Christopher*, 384 F.3d at 881-82 (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).

At first blush, Plaintiff's slip and fall on the ice seems comparable to the cases holding that wet, slippery, or uneven floors do not pose a sufficiently substantial risk to implicate the Eighth Amendment.  However, the conditions, according to Plaintiff's description, were particularly and obviously dangerous – he claims that the walkway was "completely covered with solid ice (approximately an inch thick)" (Doc. 1, p. 6).  This scenario could be considered to pose an excessive or even inevitable risk of injury, more so than a snowy area with isolated ice patches, or an ordinary wet floor.  Furthermore, there is no indication that Plaintiff voluntarily engaged in the activity that exposed him to the risk of injury.  According to his complaint, one or more of the Defendants (Ziegler, Cartwright, and/or Shirtz) "*ordered*" him and the rest of the prisoners to walk over the ice in order to get to the dining hall, despite their knowledge of the "obvious environmental hazard" (Doc. 1, p. 6) (emphasis added).  Following this order, as prisoners are required to do, Plaintiff slipped on the ice, fell, and suffered a painful injury.  On these facts, taken together, the Court is reluctant to dismiss Plaintiff's deliberate indifference claim at this early stage.  Therefore, he may proceed on Count 2 against Defendants  Ziegler, Cartwright, and Shirtz.

However, the complaint fails to state a deliberate indifference claim against the Unknown Party Grounds Crew Supervisor, and he shall be dismissed from the action.  This Defendant is not alleged to have ordered Plaintiff to subject himself to the risk of a fall.  Instead, the Unknown Party's failure to clean up the ice amounts to nothing more than negligence, which does not violate the Constitution.

**Pending Motion**

Plaintiff's motion for preliminary injunction (Doc. 2) shall be referred to the United States Magistrate Judge for further consideration.

**Disposition**

The Clerk is **DIRECTED** to add the **WARDEN of MENARD** as a party Defendant, in her official capacity only.

Defendant **UNKNOWN PARTY/JOHN DOE GROUNDS CREW SUPERVISOR** IS **DISMISSED** from this action with prejudice, for failure to state a constitutional claim against him upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **WEXFORD HEALTH SOURCES, INC., SHEARING, MOLDENHAUER, NWAOBASI, ZIEGLER, CARTWRIGHT, SHIRTZ,** and **WARDEN of MENARD**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is

entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 7, 2014**

*s/J. Phil Gilbert*
United States District Judge
