IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROBERT AKERS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 3:14-CV-997-NJR-DGW |
| ) | |
| **WEXFORD HEALTH SOURCES, INC.,** ) | |
| **DR. ROBERT SHEARING, MICHAEL** ) | |
| **MOLDENHAUER, DR. SAMUEL** ) | |
| **NWAOBASI, MAJOR JAY ZIEGLER,** ) | |
| **LT. KEVIN CARTWRIGHT, SGT.** ) | |
| **ROBERT SHURTZ, and KIMBERLY** ) | |
| **BUTLER,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court are the following three motions filed by Plaintiff Robert Akers: a Motion for Sanctions against Defendants Wexford Health Sources, Inc., Dr. Robert Shearing, Dr. Samuel Nwaobasi, and Michael Moldenhauer (Doc. 141), a Motion for Sanctions under Federal Rule of Civil Procedure 37 against Defendants Wexford Health Sources, Inc., Dr. Robert Shearing, Dr. Samuel Nwaobasi, and Michael Moldenhauer (Doc. 183), and a Motion for Reimbursement from the Wexford Defendants for Counsel's Time and Expense to Conduct the Deposition of Dr. Stacy Stratmann (Doc. 185). Akers also recently filed a Motion to File Supplemental Exhibit B to His Reply to the Wexford Defendants' Response to Plaintiff's Motion for Sanctions under Rule 37 (Doc. 197).

## BACKGROUND

Plaintiff Robert Akers ("Akers"), an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this action, *pro se*, on September 15, 2014, alleging that his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). More specifically, Akers alleges that various medical personnel, namely Dr. Robert Shearing, Dr. Samuel Nwaobasi, Nurse Michael Moldenhauer, and Wexford Health Sources, Inc. ("the Wexford Defendants") failed to provide necessary medical treatment for his painful, inguinal hernia, in violation of the Eighth Amendment.[1]

In conjunction with his complaint, Akers filed a motion for preliminary injunction asking that the Court order Defendants to arrange for an examination by a qualified specialist so that he may receive surgery to repair his hernia (Doc. 2). A hearing was held on this motion and, on March 30, 2015, Magistrate Judge Donald G. Wilkerson issued a Report and Recommendation, recommending that the motion be granted in part, finding Akers had demonstrated a reasonable likelihood of success on the merits, no adequate remedy at law, and irreparable harm absent an injunction (*see* Doc. 66). On July 29, 2015, United States District Judge J. Phil Gilbert adopted Magistrate Judge Wilkerson's Report

---

[1] In his complaint, Akers also alleges that correctional officers at Menard (Major Ziegler, Lt. Cartwright, and Sgt. Shurtz) ordered Akers to walk across the ice-covered yard with deliberate indifference to a known, obvious, and substantial risk of serious bodily harm that could result from a fall. This claim is unrelated to the issues presented in the motions before the Court, however, and will not be discussed further in this Memorandum and Order. As a result, the Court's reference to "Defendants" or "defense counsel" in this Memorandum and Order refers exclusively to the Wexford Defendants and counsel for the Wexford Defendants.

and Recommendation in its entirety, over the Wexford Defendants' objections, and entered the following order (in relevant part):

> Defendants are **ORDERED** to facilitate a referral to a physician whose specialty is appropriate to evaluate Plaintiff's left inguinal hernia within **30 days** of the date of this Order.
>
> Defendants are further **ORDERED** to provide a Notice to the Court that advises the Court of the results of the examination and whether the specialist recommends a new course of treatment and/or recommends surgery or whether the specialist does not recommend any different treatment other than that being currently provided to the Plaintiff.

In short, the Wexford Defendants were ordered to arrange an examination by an outside specialist to evaluate the hernia and inform the Court whether the specialist recommended surgery or the conservative course of treatment Akers was being provided at Menard (*see* Doc. 74).

As ordered, the Wexford Defendants referred Akers to a surgeon for evaluation of his hernia on July 29, 2015, and provided a Notice to the Court informing it of the referral (Doc. 77). Along with the Notice, counsel for the Wexford Defendants submitted to the Court, via electronic mail, a copy of the report prepared by the evaluating surgeon from Lincoln Surgical Associates, Ltd., Dr. Luong (*see* Exhibit A, August 14, 2015 Email to Court). In the Notice to the Court, Defendant Wexford indicated that "[i]t is clear from the surgeon's documentation the hernia is reducible, not incarcerated, not strangulated and not causing any medical complications," however, and most significantly, Defendant Wexford remarked that "[f]rom the surgeon's documentation, it is unclear if

the surgeon recommended surgical repair as the medically preferred course of treatment or simply listed surgical repair as an elective option" (Doc. 77, ¶¶ 5-6).

Subsequently, Akers filed a motion to acquire the surgeon's report indicating that he needed the report for his records (Doc. 88), to which the Wexford Defendants responded, indicating they inadvertently failed to provide Akers with a copy of the report, but, concurrent with the filing of their response, mailed Akers a copy (Doc. 94). Based on Defendants' representation that Akers was mailed a copy of the surgeon's report, Magistrate Judge Wilkerson found the motion moot (*see* Doc. 99). Akers also filed a motion to enforce the surgeon's recommendation stating, in no uncertain terms, that Dr. Luong, the outside specialist, had recommended surgery after his evaluation (Doc. 104). Soon thereafter, Magistrate Judge Wilkerson appointed attorney Gary L. Payne to represent Akers (Doc. 107). Per the Court's order assigning counsel, the motion to enforce the surgeon's recommendation filed *pro se* by Akers was denied without prejudice (*Id.*).

On June 7, 2016, this case was transferred from Judge Gilbert's docket to the undersigned. On June 9, 2016, Akers, through counsel, filed a motion for immediate medical attention asking the Court to order Defendants to transport Akers to a specialist for surgical repair of his hernia, as recommended by Dr. Luong on August 11, 2015 (Doc. 116). Magistrate Judge Wilkerson held a hearing on this motion on July 20, 2016 (*see* Doc. 149) and found that the Wexford Defendants failed to comply with District Judge Gilbert's Order insofar as Defendants failed to advise the Court whether the outside specialist recommended a new course of treatment and/or surgery or whether

the specialist recommended that Akers continue to receive the treatment being provided by his institution (Doc. 138). Defendants were ordered to facilitate a referral to Dr. Luong to once again evaluate Akers's hernia and provide a notice to the Court of the results of the examination, which was to specifically indicate whether Dr. Luong recommended that Akers receive a course of treatment different from that which he was currently receiving, including whether or not Dr. Luong recommended surgical repair (*Id.*).

Magistrate Judge Wilkerson amended his Order after receiving notice from Defendants that Dr. Luong was no longer seeing patients and was strictly performing surgery (*see* Docs. 139 and 147). The Amended Order directed Defendants to facilitate a referral for Akers to see Dr. Stacy Stratmann at Lincoln Surgical Associates to evaluate the hernia (Doc. 147). Akers was examined by Dr. Stratmann on August 17, 2016; she recommended Akers undergo surgery to repair his left inguinal hernia and recurrent right inguinal hernia (*see* Doc. 153-1). The Wexford Defendants represented that the surgery was approved and was in the process of being scheduled (Doc. 153). Akers indeed underwent hernia repair surgery on October 11, 2016 (Doc. 189-1, p. 6).

## ANALYSIS

**I. Motion for Sanctions against Defendants Wexford Health Sources, Inc., Dr. Robert Shearing, Dr. Samuel Nwaobasi, and Michael Moldenhauer (Doc. 141)**

Akers, through counsel, filed a motion for sanctions pursuant to 28 U.S.C. § 1927 asserting that the Wexford Defendants' failure to comply with District Judge Gilbert's Order caused counsel for Akers to spend a considerable amount of time securing surgery for his client that should have been performed in August 2015. Akers asserts that

the failure was in bad faith and has multiplied the proceedings and, as such, counsel asks for $10,000 for the time and expense related to the multiplication of the proceedings.

Under Section 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Seventh Circuit has found vexatious to mean that the attorney acted with either subjective or objective bad faith. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184-85 (7th Cir. 1992) (citation omitted). Ordinary negligence does not meet the bad faith test; however, extraordinary or extreme negligence, like reckless and indifferent conduct, satisfies this standard. *Id.* at 1185. Conduct may include situations in which counsel raised baseless claims despite notice of the frivolous nature of the claims, or counsel otherwise showed indifference to statutes, rules, or *court orders*. *Id.* (citing *Westinghouse Elec. Corp. v. NLRB*, 809 F.2d 419 (7th Cir. 1987) (other citations omitted) (emphasis added).

In *Kotsilieris*, the Seventh Circuit upheld the district court's award of sanctions pursuant to § 1927 due to the plaintiff's counsel's failure to demand a trial by jury during the seventeen months counsel had been entered on the case. *Id.* at 1186. In its opinion, the Seventh Circuit remarked that counsel's omission dealt with a matter of "vital importance" as "[t]he decision whether to try a case before a jury is a central and vital decision," one that is "constitutionally protected under the Seventh Amendment." *Id.*

Further, in *Westinghouse*, the Seventh Circuit imposed monetary sanctions on counsel for filing a brief in excess of that allotted by the appellate rules and in

contravention of the Court's order denying their request to file excess pages. 809 F.2d at 424-25. The Court specifically noted that "[e]ven if only negligence was at work, counsel must learn to be alert" and "[l]awyers must comply with the rules and our orders rather than hope to put over on the court and to apologize when caught." *Id.* at 425.

Here, the Wexford Defendants, through counsel, failed to comply with the letter and spirit of the Court's July 29, 2015 Order. This failure undoubtedly multiplied the proceedings as the Court was obligated to enter a second order directing Defendants to facilitate yet another referral to an outside specialist to evaluate Akers and provide his or her recommendations for treatment. The Court, in effect, was made to enter an Order indicating that it "really, really meant" what it said, and the Court does not look favorably on having to repeat itself. While this multiplication of proceedings necessarily resulted in excess expenditure of time and resources for the Court and the parties to this lawsuit, it is not lost on the Court that Akers was made to wait until October 11, 2016 for a surgery that was apparently recommended by a specialist in August 2015 (*See* Doc. 187).

The Court, having found that defense counsel's conduct unnecessarily multiplied the proceedings in this matter, must determine whether this conduct was committed in bad faith (*i.e.* whether it may be characterized as reckless and indifferent conduct, or extraordinary or extreme negligence). While Akers has presented some evidence tending to show that defense counsel's failure to comply with Judge Gilbert's Order was intentional, or at least the result of pure legal strategy, the Court is not convinced that defense counsel intended to multiply the proceedings or ignore the Order of this Court.

However, even though defense counsel's failures and resulting delays in this matter were not intentional, defense counsel was reckless and extremely careless as they took the "ostrich-like tactic" of ignoring the parts of Judge Gilbert's Order that were apparently inconvenient to follow. *See Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 753 (7th Cir. 1988) (citation omitted) (refusing to tolerate the plaintiff's "ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist").

Specifically, defense counsel failed to indicate whether Dr. Luong, the outside specialist, recommended surgery (although it now appears that Dr. Luong did in fact recommend surgery and did so unequivocally) (*See* Doc. 187, p. 1); rather, counsel indicated that Dr. Luong's recommendation was "unclear." The Notice left the Court in no better position to evaluate the efficacy of Akers's treatment than it was in prior to issuing its Injunction Order. Even if the Court takes defense counsel's argument that the recommendation of Dr. Luong was not clear and they did not want to follow-up with Dr. Luong to clarify his recommendation so as to avoid any issues related to HIPAA at face value, their failure to follow-up to ensure their clients had fully complied with the Court's Order is inexcusable. Whether or not Dr. Luong recommended surgery was *the* reason for the Court's Order for the referral. As such, defense counsel either knew, or should have known, that the Notice failed to follow Judge Gilbert's Order. Defense counsel's failure to follow-up and ensure that Defendants complied with both the letter and spirit of the Order was reckless and extremely careless, particularly in light of defense counsel's significant experience in litigating these types of matters.

Moreover, the Court is not convinced that Dr. Luong's report was unclear, particularly if reviewed by experienced medical professionals, such as Defendants. In making this finding, the Court relies on Dr. Stacy Stratmann's deposition testimony explaining that the physician's plan is the recommendation (Doc. 189-1, p. 19), and Dr. Luong's plan stated: "lap v. open. Pt chooses laparoscopic LIH procedure (*see* Doc. 117-1). It appears that defense counsel could have, or should have, elicited this information from their clients prior to their filing this Notice with the Court and come to the conclusion that Dr. Luong recommended surgery. Moreover, Dr. Luong's deposition testimony makes clear that he recommended surgery, stating that his recommendation "was to perform a hernia repair. That was the plan," and indicating that he believed the surgery was medically necessary at that time (Doc. 169-1, p. 4.).

The Court is also alarmed at counsel's differing positions regarding the clarity of Dr. Luong's recommendation. As mentioned above, Defendant Wexford's August 14, 2015 Notice to the Court specifically indicated that "[f]rom the surgeon's documentation, it is unclear if the surgeon recommended surgical repair as the medically preferred course of treatment or simply listed surgical repair as an elective option" (Doc. 77, ¶ 6). In Defendants' response to Akers's Motion for Immediate Medical Attention, however, Defendants indicated that they "concede elective surgical repair is one option for the treatment of a reducible inguinal hernia. However, it is not medically necessary surgery" (Doc. 123, p. 10). Defendants failed to establish how they arrived at such conclusion in light of Dr. Luong's report.

Defendants also state that "Dr. Luong also discussed with plaintiff 'possible postoperative bleeding, infection, pain/paresthesia, swelling, hernia recurrence, seroma, wound problems, urinary retention' as a consequence of this elective surgery" (*Id.*). This statement implies that Dr. Luong's recommendation was to complete an elective surgery, which is in contravention of the explanation provided in the Notice to the Court. Presenting the Court with these conflicting statements is most certainly reckless and indifferent conduct, or at least extraordinary negligence.

For these reasons, sanctions pursuant to 28 U.S.C. § 1927 are appropriate. Counsel for Akers, Gary Payne, asserts that he spent 52.85 hours attempting to rectify the inequity created by defense counsel's failure to comply with the Court's Order and, at an hourly rate of $400, indicates the cost to his firm to be $21,140.00.[2] Mr. Payne asks for $10,000.00, however, because that was the amount of sanction originally requested in Akers's reply brief (Doc. 125).

To determine the amount of fees, a court should multiply a reasonable number of hours expended by the prevailing market rate for the attorney's time. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999). The petitioning party has the burden of proving its market rate, which the opposition may then rebut. *Id*. In determining an appropriate hourly rate, an attorney's actual billing rate for similar work is presumed reasonable. *Id*.

Here, Mr. Payne submits an hourly rate of $400, citing his significant experience and involvement in different facets of the workings of his law firm. While the Court does

---

[2] In his motion, counsel for Akers calculates a total of $21,540.00; however, this appears to be a typographical error.

not doubt Mr. Payne's experience and ability, he has not provided evidence that $400 per hour is his actual billing rate, particularly for civil rights litigation. The Court finds that in this District, an appropriate market rate is $300 per hour. *See Myatt v. Gladieux*, Cause No. 1:10-cv-64-TLS, 2015 WL 6455387, at *2-5 (N.D. Ind. October 23, 2015) (awarding an attorney with 30 years of experience in employment and civil rights litigation $350 per hour and awarding a rate of $75 per hour for a paralegal for time spent litigating a civil rights, class action matter); *see also Cavada v. City of Chicago*, No. 13-cv-1916, 2014 WL 4124273, at *3-4 (N.D. Ill. August 18, 2014) (awarding partner-level attorneys an hourly rate of $385 for work on a civil rights case based on the prevailing rate in Chicago, Illinois); *see also Lasswell v. City of Johnson City*, 436 F.Supp.2d 974, 982 (S.D. Ill. 2006) (awarding attorney with significant experience in civil rights litigation have been awarded $250 per hour and attorneys with less experience have been awarded $200 per hour).

Mr. Payne also submits that a total of 52.85 hours have been expended on rectifying the situation that resulted from defense counsel's conduct. The Court has reviewed the hours submitted and finds that the time spent drafting the motion for injunctive relief and motion for sanctions is excessive. Accordingly, the Court finds it necessary to reduce the total hours by fifty percent. The total expense, as allowed by the Court, amounts to **$7,927.50** (26.425 hours x $300 per hour). The Court finds that this sum is an adequate sanction against defense counsel.

**II.  Motion for Sanctions under Federal Rule of Civil Procedure 37 against Defendants Wexford Health Sources, Inc., Dr. Robert Shearing, Dr. Samuel Nwaobasi, and Michael Moldenhauer (Doc. 183)**

Akers filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 37(c)(1) due to Defendants' failure to timely produce to Akers a complete copy of Dr. Luong's report from the examination on August 11, 2015. And, because good cause has been shown, the Court grants Akers's recently filed Motion to File Supplemental Exhibit B to His Reply (Doc. 197); the Court has considered the exhibit in ruling on the motion.

Rule 37(c) provides that a court may issue an order sanctioning a party for their failure to provide information as required by Rule 26(a) or (e). Available sanctions include prohibiting the party from using the information to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless. FED. R. CIV. P. 37(c)(1). Sanctions also may include those available under Rule 37(b)(2)(A)(i)-(vi).

The basis for Akers's motion is Defendants' delayed and incomplete production of Dr. Luong's examination report. The report reflected notes of an examination conducted by Dr. Luong on August 11, 2015 (*See* Exhibit A). This report was provided to the Court, via electronic email, on August 14, 2015 (*See id.*). In his motion for sanctions, Akers explains that Defendants initially failed to provide him the report, prompting him to motion the Court for the document on October 19, 2015 (*See* Doc. 88). Akers now asserts that, when Defendants provided him the report in response to his motion (on or about October 29, 2015), it consisted of only four pages, when the entirety of the report was fourteen pages. Akers concedes that Defendants have sufficiently explained the

omission of some of the pages, but asserts that three pages were omitted, without sufficient explanation, and these pages "are inarguably the most important part of the report wherein Dr. Luong unambiguously and without qualification recommended surgery."

Akers argues that Defendants' delayed and incomplete production of Dr. Luong's report was committed in bad faith and resulted in a significant delay in Akers receiving surgery to repair his hernia because he was unable to respond and refute the errors in Defendants' August 14, 2015 Notice. Accordingly, Akers asks the Court to impose the following sanctions: (1) directing that matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (2) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (3) striking pleadings in whole or in part; (4) rendering a default judgment against the disobedient party; or (5) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Defendants timely responded to Akers's motion arguing first that, although the production of Dr. Luong's report was delayed, it was complete; second, their failure to provide Akers with a copy of the report in August 2015 did not lead to an additional year of pain and suffering for Akers; and finally, the sanctions sought by Akers are unwarranted as the only failure committed by Defendants or defense counsel was an inadvertent oversight that was corrected when it came to their attention.

While it is apparent to the Court that whether Akers received the entirety of Dr. Luong's report in October 2015 is ardently contested, this issue is not dispositive for purposes of determining whether Rule 37 sanctions are warranted. After careful review of the record before the Court and consideration of the parties' arguments regarding what portions of the report were produced and when, the Court finds that the evidence is insufficient to conclude that Defendants, or their counsel, intentionally produced only a portion of Dr. Luong's report. The Court further finds that Defendants' delayed production of the report was inadvertent and, moreover, that the delay in its production or the alleged incompleteness of the report was harmless. In making this finding, the Court notes, as Defendants point out, it is undisputed the Court received a copy of the entire report in a timely manner.

The Court further remarks that, although Akers's characterization of the missing pages of the report implies that they were a "smoking gun," showing that Dr. Luong clearly recommended surgery, the Court disagrees with this characterization. While it is now clear to the Court that Dr. Luong recommended surgery, it did not find this clarity on plain reading of the report, particularly in light of Defendants' Notice to the Court, which the Court has found misleading and misguided and has sufficiently sanctioned Defendants for the submission of such. Significantly, the clarity regarding Dr. Luong's recommendations was recognized only after counsel for Akers engaged in discovery and, through Attorney Payne's due diligence, was able to provide context to Dr. Luong's report as it would be read by a medical professional. The Court cannot say that Akers's receipt of Dr. Luong's August 11, 2015 Report in its entirety and in a timely fashion

would have resulted in any change in the posture of this case, and thus the Court denies Akers's Motion for Sanctions under Rule 37 (Doc. 183).

### III. Motion for Reimbursement from the Wexford Defendants for Counsel's Time and Expenses to Conduct the Deposition of Dr. Stacy Stratmann (Doc. 185)

In his third motion, Akers asks the Court to order the Wexford Defendants to reimburse him in the amount of $3,946.25 for the time and expense incurred in conducting the deposition of Dr. Stacy Stratmann.

Akers's motion is posited on his argument based on 28 U.S.C. § 1927 that Defendants unreasonably and vexatiously multiplied the proceedings in this case. As set forth above, the Court finds that counsel for the Wexford Defendants did unreasonably multiply the proceedings. As § 1927 indicates that an attorney who so multiplies the proceedings may be required to satisfy the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct, the Court need only determine whether the conduct described above resulted in the necessity of securing Dr. Stratmann's deposition. The Court finds that it did.

First, the Court finds unavailing Defendants' argument that Dr. Stratmann only became involved in this matter because Dr. Luong had changed his scope of practice and Defendants have no control over Dr. Luong's practice. There would have been no necessity for a referral to Dr. Stratmann but for Defendants' conduct as described above. Further, while the Court acknowledges Defendants' point that, just because Dr. Luong recommended surgery, it does not follow that surgery would have necessarily been ordered by the Court or approved by Akers's providers, this argument simply misses

the mark. Whether or not surgery would have resulted based on Dr. Luong's August 11, 2015 examination is not relevant to the finding that defense counsel multiplied the proceedings in this case, resulting in a second examination by an outside specialist that was conducted by Dr. Stratmann. As such, the Court finds that Dr. Stratmann's deposition was related to Defendants' actions that multiplied the proceedings in this case and, therefore, the costs incurred in taking the deposition are recoverable pursuant to § 1927.

The Court has reviewed Akers's counsel's request for reimbursement and shall award counsel $300 per hour (see above discussion for the valuation of Mr. Payne's time) for 3.5 hours,[3] amounting to $1,050.00. Further, counsel shall be reimbursed in the amount of $500 for Dr. Stratmann's deposition fee and $366.25 for the fee paid to Pohlman Reporting. In total, counsel for the Wexford Defendants shall reimburse counsel for Akers **$1,916.25** related to the cost and expense of taking Dr. Stratmann's deposition.

## CONCLUSION

For the reasons set forth above, the Motion for Sanctions against Defendants Wexford Health Sources, Inc., Dr. Robert Shearing, Dr. Samuel Nwaobasi, and Michael Moldenhauer (Doc. 141) is **GRANTED in part and DENIED in part**; the Motion for Sanctions under Federal Rule of Civil Procedure 37 against Defendants Wexford Health Sources, Inc., Dr. Robert Shearing, Dr. Samuel Nwaobasi, and Michael Moldenhauer

---

[3] The Court reduces Mr. Payne's time for the preparation of the deposition from 4.9 hours to 2.5 hours, eliminates time spent traveling to and from the deposition because this time is not sufficiently supported by the record, and eliminates time spent conducting the initial review of the deposition transcript.

(Doc. 183) is **DENIED in its entirety**; the Motion for Reimbursement from the Wexford Defendants for Counsel's Time and Expense to Conduct the Deposition of Dr. Stacy Stratmann (Doc. 185) is **GRANTED in part and DENIED in part**; and the Motion to File Supplemental Exhibit B to His Reply to the Wexford Defendants' Response to Plaintiff's Motion for Sanctions under Rule 37 (Doc. 197) is **GRANTED**.

Counsel for Defendants Wexford Health Sources, Inc., Dr. Robert Shearing, Dr. Samuel Nwaobasi, and Michal Moldenhauer are **ORDERED** to reimburse Attorney Gary Payne, Simmons Hanly Conroy, LLC, a total of **$9,843.75**[4] within **30 days** of the date of this Order. At this juncture, the Court finds the issues related to Akers's motion for preliminary injunction resolved and does not anticipate considering any additional motions related to this issue.

**IT IS SO ORDERED.**

DATED: March 30, 2017

s/ Nancy J. Rosenstengel_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

---

[4] The total amount is the sum of $7,927.50 in sanctions awarded pursuant to the Motion for Sanctions (Doc. 141) and $1,916.25 in sanctions awarded pursuant to the Motion for Reimbursement (Doc. 185).